IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KEVIN SNODGRASS, JR., ) | |
|     Plaintiff, ) | Civil Action No. 7:16CV00050 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| S.L. MESSER, *et al.*, ) | United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Kevin Snodgrass, Jr., a Virginia inmate proceeding *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983. In his complaint, Snodgrass alleges that the defendant prison officials charged and convicted him of a disciplinary offense without due process, retaliated and conspired against him, sexually harassed him verbally and by conducting an unlawful strip search, and/or failed to investigate his harassment complaint. Having reviewed the record, the court concludes that the defendants' motion to dismiss must be granted.

I.  Background

Snodgrass is incarcerated at Red Onion State Prison ("Red Onion") in Pound, Virginia.[1] On August 20, 2015, from about 12:00 to 1:30 p.m., he exercised in his cell. During this time, Red Onion officers conducted the afternoon count, but Snodgrass allegedly did not hear any whistle or verbal order announcing this procedure. He alleges that defendants Messer and Bishop purposely failed to blow the whistle or otherwise announce the start of count procedures. At 4:50 p.m., two officers served Snodgrass with a disciplinary charge for failing to stand for the afternoon count. Snodgrass alleges that defendant Adams did not conduct a proper investigation

---

[1] The court summarizes here the allegations in Snodgrass's complaint and attachments without making any finding of fact regarding the events that actually occurred.

before approving this charge, as demonstrated by Adams' failure to obtain and attach a statement from Messer.

Around 5:20 p.m., while conducting routine rounds of the unit, Messer walked up to Snodgrass's cell "in an aggressive manner . . . and began to verbally harass and threaten [him] with sexual comments."[2] (Compl. 3, Dkt. No. 1.) Messer then ordered Snodgrass to strip. Snodgrass removed his shirt, but when Messer stated, "[P]ull your pants down so I can see that black ass," Snodgrass refused. (*Id.*) "Embarrassed, and upset emotionally," Snodgrass asked to see a higher ranking officer and told Messer that he would file a "PREA" report that Messer had sexually harassed him;[3] in reply, Messer yelled, "[T]hat's cause you're a f\*\*'n SNITCH." (*Id.*) Inmates in cells nearby have filed affidavits stating that they overheard this conversation between Messer and Snodgrass.

In preparation for the hearing on the disciplinary charge that he had failed to stand for count, Snodgrass requested an advisor and witness forms, but received only two forms. Officers told him that additional forms were not available. Originally scheduled for August 26, 2015, the hearing was actually conducted two days later with no notice of postponement. Snodgrass asked to be allowed to obtain witness statements from two inmates and a copy of the Reporting Officer Response Form, to show that Officers Bishop and Messer did not announce afternoon count on August 20, 2015. Snodgrass also requested documentation to show that these two officers had charged him numerous times in the past four months for failing to stand for count. Hearing

---

[2] Snodgrass alleges that Messer said, "I'm going to knock you the f\*\*\* out and f\*\*\* you in the ass to wake you back up. . . . I'm a let you out your cell to suck my d\*\*\*!" (Compl. 3, Dkt. No. 1.)

[3] A "PREA report" apparently refers to a complaint raised under the Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 038.3, a Prison Rape Elimination Act ("PREA") procedure adopted in response to a federal law by that title, 42 U.S.C. §§ 15601-15609. *See* http://www.vadoc.virginia.gov/about/procedures (last visited March 3, 2017).

2

officer Counts denied these requests and allegedly "failed to remain fair and impartial based on the facts presented when she rendered a guilty verdict." (*Id.* 4.)

On appeal, defendant Barksdale upheld the guilty finding. In doing so, he noted that he had considered the appeal under the assumption that the officers had *not* announced count. He also found that Snodgrass could have requested witness forms before the hearing. Snodgrass's allegation that Bishop and Messer were the only officers who had charged him with the same offense on prior occasions over a four-month period also did not convince Barksdale to vacate the conviction.

When Snodgrass notified supervisor Tori Raiford of Messer's sexual harassment comments, she allegedly told Snodgrass that she did not "give a shit! That's your problem!" (*Id.*) Snodgrass wrote a letter to defendant Clarke, VDOC director, about the sexual harassment. In response to the PREA report, Investigator Bentley interviewed Snodgrass and told him that his accusations against Messer could not be confirmed because surveillance camera footage did not have audio and no one else was present. Bentley and another investigator, defendant Fannin, failed to interview other inmates in nearby cells who overheard Messer's comments. Snodgrass alleges that Bentley, Fannin, and Warden Barksdale "conspired to not have the investigation conducted thoroughly to obtain evidence." (*Id.* 5.)

Snodgrass filed his § 1983 complaint in February 2016. Liberally construed,[4] his pleading raises the following constitutional issues, as construed by the court:

(1) After failing to announce count, Messer and Bishop conspired to bring a false charge against Snodgrass for failing to stand for count, in violation of due process and the First Amendment;

---

[4] When, as here, the plaintiff is without counsel, he is held to "less stringent standards," and the court must construe his complaint "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because the federal claims overlap substantially, the court's opinion will not address the claims by number or chronologically.

3

(2) Messer sexually harassed Snodgrass and used excessive or otherwise unconstitutional force against him by conducting an unlawful strip search, in violation of the plaintiff's Eighth Amendment rights;

(3) Messer retaliated against Snodgrass for exercising his free speech rights;

(4) Raiford, Barksdale, and Clarke, as supervisors, failed to act on Snodgrass's sexual harassment complaint against Messer;

(5) Adams, Counts, and Barksdale violated Snodgrass's procedural due process rights during the disciplinary proceedings;

(6) Fannin and Bentley failed to investigate the sexual harassment complaint against Messer, in violation of Snodgrass's rights under the Eighth Amendment and PREA.

In addition to these federal constitutional claims and interlocking allegations of conspiracy by various groups of defendants, Snodgrass alleges claims under state tort law, the Virginia Constitution, and VDOC operating procedures. As relief for the alleged violations, he seeks monetary and injunctive relief.

The defendants have filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Snodgrass has responded. Thus, the court finds the matter ripe for consideration.[5]

## II. Discussion

### A. Standard of Review

To survive the defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d

---

[5] The defendants have filed a motion for a protective order against discovery. Because their motion merely tests the sufficiency of the complaint itself, however, the court may rule on their motion before resolving disputes over discovery. Because the court herein determines that the motion to dismiss must be granted, the court will dismiss the motion for protective order as moot.

4

549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In particular, to state a § 1983 claim, Snodgrass must allege sufficient facts to establish "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts" however, and thus, need not be taken as true. *Id.* In considering the motion, the court may also take judicial notice of matters of public record. *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

### B. No Conspiracy Claims

Snodgrass opens his statement of his § 1983 claims with accusations of conspiracy, starting with Bishop and Messer and their repeated failures to announce count procedures to create false disciplinary charges against Snodgrass. In a later submission, Snodgrass more compactly describes his claims of wide-spread conspiracy as follows:

> Bishop, Messer, and Adams conspired to have a false Disciplinary Action served on [Snodgrass] . . . . Counts and Kegley[6] conspired with one-another to not remain Fair and Impartial regarding [Snodgrass's] Due Process Rights. Adams, Bentley, Fannin, Raiford, Barksdale, and Messer conspired with each other to ignore and deny [Snodgrass's] rights and claims of Sexual Misconduct and Excessive Force.

(Pl.'s Resp. 4, Dkt. No. 24.)

---

[6] Snodgrass refers to Kegley as a defendant in his later submissions, but did not name Kegley in the style of the complaint or include her in the list of defendants in that pleading.

5

To establish a civil conspiracy claim actionable under § 1983, a plaintiff must demonstrate that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy," resulting in deprivation of a federal right. *Glassman v. Arlington Cnty., Va*, 628 F.3d 140, 150 (4th Cir. 2010) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). A plaintiff must make specific allegations that reasonably lead to the inferences that members of the alleged conspiracy shared the same conspiratorial objective to try to "accomplish a common and unlawful plan" to violate the plaintiff's federal rights. *Hinkle*, 81 F.3d at 421. As such, a complaint's allegations must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Id.* at 422. Merely labeling a chronological series of actions by multiple individuals as "conspiracy" or providing only a conclusory, formulaic recitation of the legal elements of conspiracy will not do. *Nemet Chevrolet*, 591 F.3d at 255.

As reflected in Snodgrass's own description of his conspiracy theory, his "conspiracy" claims are built on nothing more than conjecture, coincidental sequences of events, and tacked-on labels. Snodgrass fails to state facts supporting a reasonable inference of the essential ingredient for a § 1983 conspiracy claim — a shared conspiratorial plan among the members to accomplish, jointly, a violation of the plaintiff's federal rights. Most importantly, for reasons the court will further discuss, Snodgrass's complaint as a whole fails to state any plausible claim that anyone, individually or as part of a conspiracy, violated his constitutional rights. Therefore, the court will grant the motion to dismiss all of Snodgrass's conspiracy claims.[7]

---

[7] Defendant Bishop has not joined in the motion to dismiss. For the same reasons discussed in addressing the other defendants' motion, however, Snodgrass fails to state any actionable § 1983 claim against Bishop. Therefore, the court will summarily dismiss the claims against this defendant under 28 U.S.C. § 1915A(b)(1). Under this section, "a prisoner's complaint seeking redress from the Government that is frivolous, malicious, or fails to state a claim may be dismissed sua sponte." *Brown v. Brock*, 632 F. App'x 744, 746 (4th Cir. 2015).

C. No First Amendment Retaliation Claim

In his response to the motion to dismiss, Snodgrass explains his First Amendment retaliation claim: after Snodgrass exercised his First Amendment right to free speech (a) by complaining to an officer that Messer and Bishop had wrongfully caused him to incur a disciplinary charge, (b) by threatening to write a PREA report about Messer's comments, and (c) by demanding to see supervisors about those comments, Messer retaliated against Snodgrass by labeling him as a snitch. Snodgrass also apparently includes a similar claim against Messer and Bishop for initiating the disciplinary charge in the first place. The court finds no constitutional claim of retaliation arising from these alleged events.

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *American Civil Liberties Union v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993) (citation omitted). Claims of constitutionally significant retaliation against prison inmates must be treated with healthy skepticism, because many actions by prison officials are "by definition 'retaliatory' in the sense that [they are in] respon[se] to prisoner misconduct" or conduct. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir.1994). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). An officials' retaliatory action that causes nothing more than a mere inconvenience to the plaintiff's exercise of his constitutional rights is not sufficient to support a § 1983 claim. *Wicomico County*, 999 F.2d at 785-86. "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of

7

action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." *Id.* at 785 (citing, in a related context, *Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir. 1983) (to make out a § 1983 claim based on denial of photocopying privileges, inmate must show that denial impeded exercise of his right of access to the courts, "for if it is unreasonable but not impeding he has not made out a prima facie case of violation of his constitutional rights").

Snodgrass's verbal complaints to Messer and other officials were essentially verbal grievances. Inmates do not have a constitutional right of access to a grievance process. *Adams*, 40 F.3d at 75. Thus, contrary to Snodgrass's assertions, his "mere expressions of dissatisfaction were not constitutionally protected" for purposes of a § 1983 claim of retaliation. *See, e.g., Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011). Snodgrass's submissions also fail to state facts showing that Messer's snitch comment adversely affected his free speech rights in any way. At the most, in his response to the motion to dismiss, Snodgrass asserts that because inmates overheard Messer call him a snitch, he was "subjected . . . to further ha[r]assment by [officer] Brandy Lewis and threats of physical harm from inmates." (Pl.'s Resp. 4, Dkt. No. 24.) Nevertheless, Snodgrass proceeded to file his PREA report, wrote a letter to Clarke, and filed this lawsuit about Messer's comment. Thus, Snodgrass fails to show that Messer's conduct, even if retaliatory in some sense, caused Snodgrass anything more than undesirable comments from those who learned of it and did not impede his exercise of his right to seek redress. *See Daye*, 417 F. App'x at 319 (finding no adverse effect from alleged retaliation where inmate "proceeded to file written grievances on the issue and then filed [a] lawsuit"). Accordingly, the court will grant the motion to dismiss as to Snodgrass's First Amendment retaliation claim against Messer.

8

### D. No Eighth Amendment Claims

Snodgrass alleges that Messer, in making sexually offensive remarks and conducting a partial strip search, violated the Eighth Amendment. The court finds no cognizable § 1983 claim arising from these allegations.

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (omitting citations). Only "the unnecessary and wanton infliction of pain" violates the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Thus, to state a claim that a prison guard used unconstitutional force against him, a plaintiff must state facts showing that the force was "nontrivial," *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), and that the official acted "maliciously and sadistically and for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-321.

Numerous courts, including this one, have held that "sexual abuse by a prison guard on an inmate may violate the Eighth Amendment." *Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) (Kiser, J.) (citing other cases). Courts have also recognized, however, that not every allegation of sexual abuse is "objectively, sufficiently serious" for purposes of the Eighth Amendment. *Id.* (citing other cases, including *Boddie v. Schnieder*. 105 F.3d 857, 861 (2d Cir.1997) ("[I]solated episodes of harassment and touching . . . are despicable. . . . But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.") (citing *Farmer*, 511 U.S. at 833-34). Moreover, "[w]ords by themselves do not state a constitutional claim, without regard to their nature." *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C.)), aff'd, 917 F.2d 1302 (4th Cir. 1990) (unpublished).

9

Thus, mere allegations of verbal abuse and harassment by guards cannot state any constitutional claim. *See Henslee v. Lewis*, 153 Fed. App'x 178, 180 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)). It follows that without some evidence that the defendant's alleged sexual abuse involved touching and inflicted pain, a complaint of sexual harassment against a prison guard does not reach constitutional proportions. *See, e.g., Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) ("To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind."); *Chambliss v. Jones*, No 14-2435, 2015 WL 328064, at *3 (M.D. Pa. Jan. 26, 2015) ("sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction" as is required to state a claim for a constitutional violation).

The comments that Messer allegedly made to Snodgrass were flagrantly sexual and unprofessional. Those words alone, however, did not constitute punishment on a constitutional scale. It is troubling that such alleged comments were immediately followed by Messer's demand for Snodgrass to strip naked, invoking increased fear that Messer might carry out his threats of sodomy. Snodgrass does not allege that he bared more than his torso, however, or that Messer touched or could have touched him during the partial strip search procedure that occurred while Snodgrass was inside his cell. On these allegations, even if proven, the court cannot find the elements of touching and pain as necessary to an Eighth Amendment claim of sexual abuse or excessive force. Therefore, the court will dismiss this claim against Messer.

### E. No PREA Claim

Snodgrass contends that Fannin and Bentley violated PREA by their deliberate indifference and failure to investigate his sexual harassment claim against Messer. This court

and others have found no basis in law for a private cause of action under § 1983 to enforce an alleged PREA violation. *See, e.g., Chapman,* 2013 WL 2322947, at *4; *Berry v. Eagleton*, No. 13-2379, 2014 WL 4273314 at * 10 (D.S.C, Aug. 29, 2014) (citing other cases).

> "[S]ection 1983 itself creates no rights; rather it provides a method for vindicating federal rights elsewhere conferred." *Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000) (internal citations omitted). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002).
>
> Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act. *See Ball v. Beckworth*, No. CV 11-00037, 2011 U.S. Dist. LEXIS 109529, 2011 WL 4375806, at *4 (D. Mont. Aug. 31, 2011) (citing cases). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. . . . The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 U.S. Dist. LEXIS 119933, 2008 WL 3851294, at *3 (D. Vt. Aug.13, 2008). Thus, Plaintiff fails to state a § 1983 claim based on an alleged violation of the PREA.

*Chapman*, 2013 WL 2322947, at *4. The court finds this reasoning persuasive and hereby adopts it. Thus, the court concludes, as a matter of law, that Snodgrass cannot pursue a § 1983 claim based on officers' alleged violation of their duties under the state's PREA procedures. Therefore, the court will grant the defendants' motion to dismiss as to any alleged PREA claim.

### F.  No Due Process Claims

Snodgrass asserts a due process violation, based on his allegation that Bishop and Messer falsely charged him for failing to stand for count. This claim has no factual support. Snodgrass admits that he did not stand for count, and he does not present any factual matter indicating that an excuse for this rule violation will prevent a disciplinary charge or conviction.[8] "Absent some evidence or claim that his disciplinary conviction was improperly obtained, [an inmate's]

---

[8] The court takes judicial notice of the current version of VDOC Operating Procedure 861.1, titled "Offender Dicipline, Institutions," which identifies Offense 213 as "Failing to follow facility count procedures or interfering with count." http://www.vadoc.virginia.gov/about/procedures (Last visited on March 3, 2017.)

11

assertions that the initial charge was false cannot state a claim." *Richardson v. Ray*, 492 Fed. App'x 395, 396 (4th Cir. 2012) (citing *Moore v. Plaster*, 266 F.3d 928, 931-33 (8th Cir.2001) (retaliatory-discipline claim may proceed where disciplinary action is *not* supported by "some evidence") (emphasis added). Moreover, Snodgrass is missing a key ingredient for all of his due process claims in this action: he provides no facts showing that he had a constitutionally protected liberty interest at stake in the challenged disciplinary proceedings.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

As a convicted prisoner, Snodgrass does not have an inherent, constitutionally protected liberty interest in avoiding penalties for prison disciplinary infractions. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). ("[T]he interest of prisoners in disciplinary procedures is not included in that 'liberty' protected by the Fourteenth Amendment.") A state-created liberty interest may exist, however, if Snodgrass (a) points to "a basis for an interest or expectation in state regulations" in avoiding a particular penalty, *Prieto*, 780 F.3d at 250; and (b) shows that the penalty "impose[d] atypical and significant hardship . . . in relation to the ordinary incidents of prison life," or will "inevitably affect the duration" of his confinement." *Sandin v. Connor*, 515

U.S. 472, 484, 487 (1995). Only if Snodgrass makes these showings does the Due Process Clause require a particular measure of procedural protection. *Id.*

Snodgrass does not state in the complaint the penalty imposed on him for the disciplinary infraction of failing to stand for count on August 20, 2015. Nothing in the record provides this information. Thus, Snodgrass fails to allege that the penalty constituted an atypical or significant hardship or that it inevitably affected the length of his confinement so as to trigger a protected liberty interest and the requisite, federal due process protections. Without stating facts to establish that he had protected liberty interest at stake in the challenged disciplinary proceedings, Snodgrass has stated no actionable claim that he was deprived of a federal right to any particular procedural protections.

Snodgrass also has no federal claim that any of the defendants failed to provide him the procedural protections provided under VDOC procedures. State officials' failure to abide by state procedural regulations is not a federal due process issue, and is, therefore, not actionable under § 1983. *Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

For the reasons already stated, the court will grant the motion to dismiss. Furthermore, Snodgrass fails to show that he was deprived of any of the limited procedural protections to which he would have been entitled if he had a protected liberty interest. *See Wolff*, 418 U.S. at 556, 566 (finding that in prison disciplinary proceedings, "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary actions taken" may satisfy due process); *Superintendent v. Hill*, 472 U.S. 445, 456 (1985) (finding "some evidence" to support disciplinary officer's decision sufficient to

13

satisfy due process evidentiary requirements). Snodgrass received advance written notice of the charge; the reporting officer's statement that Snodgrass did not stand for count provided some evidence to support a finding that he was guilty of the procedural violation; the hearing officer could reasonably have found that additional witness statements were irrelevant, as their proffered content did not contradict the evidence that Snodgrass violated count procedure as charged; Snodgrass does not deny receiving written findings of the hearing officer's findings, as indicated by Snodgrass's appeal of those findings; and the warden, even accepting a presumption that no whistle or announcement signaled the start of count, nevertheless, upheld the finding of guilt. Snodgrass's conclusory claim that the hearing officer failed to maintain impartiality is loosely based on his disagreement with the outcome and not any facts suggesting partiality.

### G. No Supervisory Liability

The court will also grant the motion to dismiss as to Snodgrass's claims of supervisory liability. First, as stated, the court concludes that Snodgrass fails to allege facts stating an actionable claim that any defendant committed any constitutional violation. Second, even if a defendant had violated Snodgrass's constitutional rights in some way, supervisory officials, even if they are subsequently notified, may not be held vicariously liable under § 1983 for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676. Third, because Snodgrass does not state facts showing that any supervisor, through his own "individual actions [or inactions], has violated the Constitution" or *caused* others to violate it, the § 1983 claims against the supervisory defendants fail. *Id.*; *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (holding that supervisory liability under § 1983 requires showings that official had actual or constructive knowledge of risk of constitutional injury and was deliberately indifferent to that risk, and that there is an affirmative causal link between the injury

14

and supervisory official's inaction). Because Snodgrass fails to state a plausible a supervisory liability claim, all such claims must be dismissed. *Iqbal*, 556 U.S. at 678.

## H. State Law Claims

In addition to his constitutional claims, Snodgrass asserts numerous claims under state law. Section 1983 was intended to protect only federal rights guaranteed by federal law, however. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Snodgrass's state law claims are thus not independently actionable under § 1983. Furthermore, because the court has determined that all his federal claims must be dismissed, the court declines to exercise supplemental jurisdiction over his state claims in this action. *See* 28 U.S.C. § 1367(c). All such claims will be dismissed without prejudice.

## III. CONCLUSION

For the stated reasons, the court will grant the defendants' motion to dismiss as to the § 1983 and PREA claims and will summarily dismiss without prejudice the state law claims and all claims against defendant Bishop.

An appropriate order will be entered.

Entered: March 10, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge